THE STATE OF FLORIDA, EX REL. GEORGE W. MARKENS, VS. MOSES J. BROWN, COLLECTOR OF REVENUE, RESPONDENT.

1. In testing the question whether an act of the Legislature was passed in conformity to the requirements of the Constitution, the Journals of the Houses of the Legislature will be examined ; and if the Journals furnish conclusive evidence that any bill was not passed in a constitutional manner it cannot be recognized as a law.

2. The Journals of the Senate and Assembly for the year 1883 do not show that Chapter 3416, an act regulating the issuing of licenses to sell liquors, wines and beer, was not passed in accordance with the requirements of the Constitution, and it is considered a valid act.

Chapter 3416, of the Laws of Florida, approved March 3, 1883, and commonly, however inaccurately, spoken of as " the Local Option Liquor Law " is the statute in question. The respondent is Collector of Revenue of Duval county. The other facts are stated in the opinion.

*The Attorney-General* for the motion.

I. The motion to quash brings up the question of the validity of the act in question: Chapter 3416, Laws of Florida.

If the Journals cannot be resorted to to ascertain whether or not the forms prescribed by the Constitution as to the enactment of laws have been followed, then this statute, as enrolled, being signed by the proper officers of the Senate and Assembly, and approved by the Governor, the motion should be granted. The authorities holding that such resort cannot be made are neither few nor wanting in respectability. Two, if not three States have, after adopting the view that such resort may be had, abandoned it for the contrary view as wiser and more in accord with the independence of the different departments of government. To hold that no such resort can be had, would remove all other difficulties from the way of granting my motion. I do not, however, ask the court to hold so, but leave it to them to decide which theory is the better. My own view, is in favor of those cases holding that such resort can be had. The case of *In re* Robert, 5 Colorado, 525, gives the decisions on both sides, and there is a preponderance, though not so great as might be imagined, in favor of going behind the enrolled act.

II. There is I think but one material question in this case, viz : whether or not the 1st amendment made by the Senate and adopted by the Assembly, but omitted in making the enrollment, is of such character as that its omission affects the real meaning and substantial effect of the law. This question I leave for the third subdivision of this brief.

As to any other alleged defects, I can see nothing worthy of comment. As to the point made that the Senate Journal does not show a suspension of the rules, for the second

reading, see Cooley's Const. Limitations, p. 135, and the cases of McCulloch vs. State, 11 Ind., 424 ; Supervisors vs. People, 25 Ill., 181 ; Spangler vs. Jacoby, 14 Ill., 297, show that it is to be presumed that the rules were properly suspended, or the proper action taken, unless the Journals show the contrary, except in cases where the Constitution expressly provides that the Journal shall show it. Our Constitution does not expressly provide that the Journals shall show that the rules were suspended or waived as to reading a bill on three separate days. Sec's. 10 and 15, Art. 4.

III. The omission of the first amendment of the Senate does not avoid the act.

The amendment is immaterial, the act being of the same effect without it.

It is to the second section, and was as follows : " That the County Commissioners shall issue said license upon the presentation of said petition."

Section 2 shows that application for " the right to sell such liquors, wines or beer " is to be made to the County Commissioners by petition as therein prescribed. Section third prohibits the Collector of Revenue from issuing a license unless a permit is presented from the Board of County Commissioners—i. e., a permit granting the right to sell such liquors, wines or beer upon complying with the requirements of the General Revenue Law. The permit which he is required by section 3 to have is that which he applies for under section 2. There is no requirement for getting this permit, but those prescribed by section 2. The power to issue the permit, upon such requirements being complied with, exists without the amendment, and it would be the duty of the Commissioners to issue on presentation of the petition at the meeting held " to hear such petition." The amendment then would neither have given

any more power, nor changed the duty of the Commissioners as to time of acting. Neither with or without the amendment could any reasonable delay be condemned. The amendment could not be construed as any limitation of the implied powers.

Authorities to show that its omission does not invalidate the statute:

In the case of The People vs. The Supervisors of Onondaga, 16 Mich., 254, the law in question was passed by both houses with a title authorizing the levying and collecting of a certain "*bounty* tax." In engrossing it after its passage, by a clerical error, the word "*county*" was substituted for "*bounty*," and the bill was submitted to and signed by the Governor with this mistake in the entitling. The court held, under a constitutional provision like the 14th Section of 4th Article of ours, that the title was an important part of the statute, but that the journals could be looked into to ascertain whether the statute passed with a proper title, and that the error being clerical was not fatal.

In Jones vs. Hutchinson, 43 Ala., 721, it is held that the insertion on enrollment of a material provision, varying the substance and legal effect of the bill renders the bill invalid, but Justice Judge says: "In making the copy of an engrossed bill for enrollment, a separate and distinct matter from the proposition of the original bill might be inserted and escape detection before the adjournment of the Legislature. If, in such a case, the matter erroneously inserted did not affect the original bill, as it had been engrossed and passed, or did not change the substance and vary the legal effect thereof, we would not be understood as deciding that the error would vitiate the whole act."

In Prescott vs. Board of Trustees of Illinois & M. Canal, 19 Ill., 325, the section introduced in the Assembly but which had not been acted on by the Senate, but was incor-

porated into the act in enrolling it, gave a power of re-appraisal—a very material power.

In Gaines vs. Harrigan, 5 Lea, 608, 609, 613, the act regularly passed the Senate and in the House was amended in the second section by striking out " Thompson's & Steger's Code " and inserting " Revised Code of Tennessee," but the amendment was never concurred in by the Senate ; and it was held that in substance there was no amendment, " Thompson's & Steger's Code " and the " Revised Code of Tennessee" being the same book.

" If we may look to the journals to see that *in form* there was an amendment not concurred in, we may further look to see that *in substance* there was no amendment."

" It seems to us that it would be the exercise of a power far more arbitrary and unwarranted for the court to declare the act of the supreme legislative authority void upon an objection like this in which there is no substance."

In Plummer vs. People, 74 Ill., 361, it is held—" 1st. Unless a change in the title to a bill in the two Houses concurring in its passage is one of substance, and calculated to mislead as to the subject of the bill, it may be regarded as a clerical mistake in no wise affecting the validity of the law. 2d. Where a bill passed the House entitled ' a bill for an act to prevent the keeping of common gaming houses,' but when introduced in the Senate it bore the title ' a bill for an act to prevent the keeping of gaming houses and to prevent gaming,' by which title it passed that body and was reported back, enrolled and approved, the body of the bill being identical in both Houses, it was *held* that the change did not render the act void."

In Moody vs. State, 43 Ala., 115, the amendments omitted were *material.*

IV. Judicial Notice:

As the Constitution makes no positive provision, and

furnishes no specific direction to ascertain what law is en-
acted by the other co-ordinate departments, or how or when
they are so enacted, it follows that the court does so from
and by reason of its inherent judicial knowledge and power,
hence an issue of fact, whether a particular bill has been
passed in conformity with the constitutional provisions,
will not be submitted to a jury.    Blessing vs. Galveston,
42 Texas, 641 ;  Moody vs. State,  48 Ala., 115 ;  Evans vs.
State, 30 Ind., 514 ;  Port vs. Supervisors, 105 U. S., 668 ;
Walnut vs. Wade, 103 U. S., 683.

V. Resorting to Journals:

The signatures of the Speakers and Governor are presump-
tive evidence of the power of the act.    The journal may be
examined.    Spangler vs. Jacoby, 14 Ill., 297 ;  Furley vs.
County of Logan, 17 Ill., 151 ;  People vs. Starnes, 30 Ill.,
121 ;  Gaines vs. Horrigan, 4 Lea, 608 ;  *Re* Roberts, 5 Col.,
525.

The court will not act upon the admissions of parties
that a statute has not been passed in the manner required
by the Constitution. Such facts must be shown either by the
printed journal or the certificate of the Secretary of State.
Happel vs. Brathauer, 70 Ill., 166.

The certificate of the Secretary of State, showing what
proceedings were had in either branch of the Legislature in
relation to the passage of a bill, is competent to show
whether or not the same was passed in a constitutional
mode ; and where such certificate, in due form, purports to
give all the proceedings there can be no inference that any
other proceedings were had in relation to the passage of the
bill.    Ryan vs. Lynch, 68 Ill., 160.

A statute having the proper forms of authentication can-
not be impeached or questioned on mere parol evidence.
Berry vs. Balt. & D. Pt. R. R. Co., 41 Md., 446.

In this case original bills looked at as well as journals.

Void section being distinct and separate, balance of statute held good.

VI. Irregularities :

The mere fact that in the transmission of a bill from the Senate, where an amendment thereto was made, to the lower house where it originated, a mistake was made by changing its original number "50" to "58" will not vitiate the bill, it appearing from the *Journal of the House it was the same bill.* Williams vs. State, 6 Lea, 549.

Where the Journals of the Senate showed that Senate Bill No. 453, for "An act to incorporate the Paris, Atlanta and *Danville* Railroad Company," was introduced, read a first and second time and committed, and that the committee to whom was referred Senate Bill No. 453, for " An act to incorporate the Peoria, Atlanta and *Decatur* Railroad Company," reported back the same with amendments, and that the same was engrossed for a third reading, and finally passed upon the call of the yeas and noes: *Held,* That these facts did not impeach the validity of the passage of the bill. They did not sustain the objection that there were or might have been two different bills pending at the same time, and bearing the same number. The number is a better means of identifying the bill while pending in the Legislature than the title. Larrison vs. P. & C. R. R. Co., 74 Ill., 17; Plummer vs. People, 74 Ill.. 361, *ante;* Walnut vs. Wade, 103 U. S., 683.

When an act of the Legislature is duly certified by the Secretary of State and published as a law of the State, the courts must receive it as having been passed in the manner required by the Constitution unless the contrary is clearly made to appear. Hensoldt vs. Petersburg, 63 Ill., 157.

The Constitutional provision requiring bills to be read on three several days before their passage does not apply to amendments to the same. People vs. Wallace, 70 Ill., 680.

The courts will not disregard an act of the Legislature because the Journals of one or both Houses of the Legislature fail to show its passage in strict conformity to all the directions in the Constitution, it being in other respects perfect and constitutional. Blessing vs. Galveston, 42 Texas, 641.

The failure of the presiding officer of the Senate to sign a bill, which was afterwards approved by the Governor, and which the Journal of the Senate shows passed the Senate by the Constitutional majority, does not affect the validity of the act. Cottrell vs. State, 9 Neb., 125 ; Com'rs of Leavenworth vs. Higginbotham, 17 Kansas, 62.

A bill originating in the Senate was passed by the House of Representatives with amendments, and returned to the Senate who concurred therein, but the vote on concurrence was not disclosed by the Journal: *Held*, That the act was valid. McCulloch vs. State, 11 Ind., 424 ; Hull vs. Miller, 4 Neb., 502 ; Com'rs of Leavenworth vs. Higginbotham, 17 Kansas, 62.

If the Journal of either House states that a bill on a suspension of the rules by a required Constitutional majority was read more than once on the same day, the r.asons for such suspensions need not be given. What constitutes a " case of urgency " authorizing such suspension, is a matter of Legislative discretion. Hull vs. Miller, 4 Neb., 503 ; McCulloch vs. State, 11 Ind., 424.

The requirement of Section 26 of the Constitution of the State of Colorado, that the fact of the signing of a bill by the presiding officer in the presence of the House over which he presides shall be entered on the Journal is directory, and in the silence of the Journal it is to be presumed that the bill was so signed. *In re* Roberts, 5 Col., 525.

Statutes are not to be lightly impeached. Com'rs of Leavenworth vs. Higginbotham, 17 Kansas, 74.

When the Journals are silent touching a step in the proceedings which the Constitution requires to be taken, it will be presumed by the courts that the Constitutional requirement was complied with. McCulloch vs. State, 11 Ind., 424; Walker vs. Griffith, 60 Ala., 3 )1 ; Spangler vs. Jacoby, 14 Ill., 297.

It is not necessary that the Journals of the Senate should state that a law was read three times before being put upon its final passage. This is presumed to have been done, unless the Journals show it was not done. Supervisors vs. People, 25 Ill., 181.

After this case had been submitted a brief of

*Mr R. B. Archibald,*

who had been engaged in a similar case in the Circuit Court, was courteously loaned by Mr. A. to the Attorney-General, and filed for the consideration of the court.

*John Earle Hartridge, contra.*

The respondent takes the position that Chapter 3416, Laws of Florida, approved March 3, 1883, is a law notwithstanding the facts stated in relator's petition.

The facts set up by the petition and admitted by the respondent are in brief, as follows :

Assembly substitute for Bill 168 passed the House by a vote of 46 to 22, page 504, H. J., on 22d February, 1883, and was ordered certified to the Senate.

On 23d February said bill was transmitted to the Senate and committed to the Committee on Temperance. Senate Journal, pages 509 and 510.

On same day the committee reported the bill back to the Senate favorably, with amendments. Senate Journal, page 518.

The amendments of the committee were adopted, and on motion of Mr. Sharpe, all after the word " minor " in section 4 was stricken out. The bill as amended was read the second time, first and second reading on 3d day, without waiving rules, and rules waived and put on third reading, waived again and put back, and on motion of Senator Duncan, all after word minors, in section 5, stricken out, rules again waived and put on third reading and final passage and passed, vote 11 to 8, ordered to be certified to the Assembly. Senate Journal, page 519.

This action of Senate was certified to House on same day, 23d February, and the House concurred in 1st Senate amendment and refused to concur in 2d and 3d amendments and asked for a committee of conference, appointing on their part their portion of the committee. House Journal, page 521.

The Senate were advised on the same day that the Assembly had concurred in Senate Amendment to the bill, to insert at the end of section two (2) : " That the County Commissioners shall issue said license upon the presentation of such petition " and refused to concur in striking out all after the word minors in sections 4 and 5, and asked for a committee of conference. Senate appointed two Senators on such committee. Senate Journal, pages 524, 525.

Next day, 24th February, 1883, the conference committee reported, (to the Assembly, H. J., 536, to the Senate, S. J., 526,) recommending concurrence in Senate amendments to sections 3 and 5, and to add after " minors " in each section " or persons in a state of intoxication," which was read and adopted in both Houses the same day.

28th February, bill reported correctly enrolled, H. J., page 585.

Now the bill that passed the House on the 22d of February is not the bill as published, because on the 23d (next

day) the Senate provided for adding an important amendment to section 2, and to which I will again refer, and struck out about thirty lines from section 4, having reference to sale of liquors to habitual drunkards. Nor is it the bill that passed the Senate on the 23d day of February, as it purports to be, for that bill had nothing in section 4 after the word minors, nor in the 5th section after the same word.

The words, or any person in a state of intoxication, having been added by the conference committee, and the second section of the bill should have contained at the same end of the second section the first Senate amendment, viz: "That the County Commissioners shall issue said license upon the presentation of such petition."

The court will observe that the conference committee of the 24th reported that the Senate amendments be concurred in. This was the striking out all after the word minors in sections 4 and 5. The House, it will be marked, had previously concurred in the amendment to section 2, viz: "That the County Commissioners shall issue said license upon the presentation of such petition," and that the words " or any person in a state of intoxication" be added, was the action of the conference committee, and the bill with these latter amendments so added by the conference committee, (amendments to sections 4 and 5,) was enrolled and signed.

But the amendment to the second section which made it mandatory upon the Commissioners to issue licenses, was improperly left out of the enrolled bill.

Therefore, no such bill, as published, ever passed either House.

Questions similar to the one here presented have been before the courts of other States, and have been declared to render the whole law invalid. Jones vs. Hutchinson, 43 Ala., page 721; Moody vs. State, 17 Amer. R., pages 28,

29; 48 Ala., 115 ; The State *ex rel.* vs. Platt, 2d S. C., page 150 ; 16 Amer. R., 6 and 7.

These are both cases exactly in point as to the omission or addition of amendments to a bill by the enrolling clerk.

The case of Jones vs. Hutchinson, was where the enrolling clerk erroneously enrolled an amendment that had been lost, and the bill so erroneously enrolled was signed by the Governor. The court decided that it was not a law.

The case of Moody vs. State was where an amendment had been left off the enrolled bill, and the court held that the law was not a valid one.

In the case at bar the amendment which was omitted was an important one. It made it mandatory upon the Commissioners to issue the license. The mover of the amendment had an important end in view. He wished to prevent the Commissioners inquiring into the petitions and the signers thereof and to compel them, upon the mere presentation of a petition signed by a majority of the registered voters, to issue the license.

We claim that all acts subsequent to the time of the enrollment of this bill without the amendment to section two (2) which had been adopted were null and void.

This is the doctrine in regard to errors in the record, and when an amendment passes and is not enrolled, or does not pass and is enrolled, in those cases, at whatever distance of time the discovery is made, the subsequent proceedings with reference to such bills are null and void. Cushing on Law and Practice of Legislative Assemblies, marginal page 2402.

But the amendment adopted, and which was omitted from the enrolled bill, is material in another respect.

The law as it stood at the time of the passage of this bill authorized the Collector of Revenue to issue the license. This amendment would have changed the law in this re-

spect and made it compulsory upon the County Commissioners to have issued the license.

Certainly some limit must be set to reckless legislation. If they can omit an amendment of this kind without impairing the validity of the law, what is to prevent them going further at a different time.

For this court to uphold the validity of this law would be to establish a precedent dangerous in the extreme. Legislative bodies are purposely hedged in by rules and restrictions, and particular formalities are observed that the very errors that we complain of may be avoided. If to permit recklessness in legislative matters there is added the sanction of the highest court in the State, it may be impossible to conjecture to what the people may not be subjected to under the forms of legislation.

The Senate Journal, page 519, shows that rules were not waived. This is violation of the Constitution. Article 4 Sec. 15 of Constitution.

THE CHIEF-JUSTICE delivered the opinion of the court.

This is an original application for a mandamus to compel the Collector of Revenue to issue a license to relator to sell intoxicating liquors, notwithstanding the act of the Legislature of 1883, Chapter 3416. It is alleged by relator that the act printed in the statutes is not a valid law because a material amendment to the bill had been made by the Houses of the Legislature before its passage, which amendment had not been incorporated in the bill as enrolled and signed, and therefore the act as published is not the act as passed. It is also alleged that the act was not passed in a constitutional manner, it having been read a second time on one day without waiving the constitutional rule on that subject. The Journals of the Senate and As-

sembly are referred to as showing the irregular and unconstitutional manner of the passage of the bill.

Respondent moves to quash the alternative writ, and this motion, it was conceded, brought up the whole case upon its merits, the Journals of the Legislature being considered in connection with the allegations of relator.

It is contended by relator that when the bill was pending in the Senate (known as Assembly Bill No. 168) it was there amended by inserting at the end of section two the words: "That the County Commissioners shall issue said license upon the presentation of such petition," and the bill passed the Senate with this amendment, and on the same day the amendment was concurred in by the Assembly, but that this addition to section two was omitted from the enrolled bill and was not incorporated in the act as approved by the Governor.

If the journals show conclusively that any material portion of a bill as passed was omitted in the enrolling, so that it may be considered that the act as approved was not passed by the Legislature and does not express the legislative will, the act as approved, at least to the extent that it is affected by the omission, must be held invalid. This is a rule now well settled by the American courts.

The Constitution requires the keeping of journals of their proceedings by the respective Houses of the Legislature; and these Journals are received as evidence of such proceedings. When an act is duly approved and published, it is *prima facie* a law; but if the Legislative Journals show that instead of being passed it was defeated, or that it is not the same that was passed, it is not a law. See the collection of cases in Cooley's Con. Lim., 5th Ed., 163, note 2.

Upon an examination of the Journals of the Senate and Assembly of 1883 we are unable to find that the amendment above mentioned was voted upon or adopted. No

mention was made in either Journal that any such amendment was moved by any member or considered by either House.

The only mention of it contained in the Journals is in a communication of the Clerk of the Assembly addressed to the President of the Senate under date of February 23d, 1883, as follows:

" SIR: I am directed by the Assembly to inform the Senate that the Assembly has concurred in Senate amendment to Assembly Bill No. 168. Insert at the end of section two, ' that the County Commissioners shall issue said license upon the presentation of such petition,' and refused to concur in the second Senate amendment ' to strike out all after the word minor in the fourth section,' and refused to concur in the third Senate amendment, ' to strike out all after the word minor in the fifth section,' and ask for a committee of conference, and have appointed Messrs. Harris, Cobb and Kickliter such committee on the part of the Assembly, and respectfully request the appointment of a similar committee on the part of the Senate." (Signed by the Clerk.)

Now, the *Senate Journal* does not show that such an amendment was moved or voted upon in the Senate, nor do the words appear in any report of any committee which was acted on by the Senate. The only indication that such an amendment had been made is in this letter of the Clerk of the *Assembly* to the President of the Senate. The Clerk of the Assembly is not the proper source of information as to the action of the Senate, and nowhere else do we find the statement.

In the Journal of the Assembly, as before stated, we do not find any mention of any motion or vote upon this amendment.

The report of the Enrolling Committee of the House

shows that the committee had examined the bill as enrolled, and find it " correctly enrolled." On the same day the Speaker of the Assembly and the Clerk signed the bill, attesting that it was the bill as passed. The bill was also duly signed by the President and Secretary of the Senate, thus attesting its correctness.

We have, then, no evidence that the words of the supposed amendment were ever adop ed by the Senate or Assembly and passed as part of the bill, but we have the negative evidence of the Journals of each House that no such amendment was passed, the Journals not showing it, and the affirmative evidence of the presiding officers and clerks that the bill was passed as signed by them ; and the certificate of the Enrolling Committee of the Assembly that it was enrolled as it was passed.

We cannot regard the communication of the Clerk of the Assembly to the President of the Senate as evidence of the proceedings of the Senate while the Senate Journal does not contain such proceedings, nor does the Assembly Journal show its action on the amendment ; nor can we take that communication as controlling evidence, that the Enrolling Committee and the Speaker and the same Clerk of the Assembly were mistaken in certifying to the correctness of the enrolled bill.

The bill, after the supposed amendment, was in the hands of a committee of conference of both Houses, which committee reported the bill to the respective Houses and their report was adopted. There is nothing to show that any further action was ha l upon the bill before it went to the Enrolling Committee and they reported it correctly enrolled.

The conclusion is that there is no evidence in the Journals of the two Houses that the act as approved is not identical with the bill as passed by the Legislature.

The only remaining question suggested by the relator is that the act was not passed in conformity to the rules prescribed in the Constitution, in this, that the bill was read a second time on the same day without waiving the rule prescribed in Section 15, Art. IV, to wit: "Every bill shall be read by sections on three several days in each House, unless, in case of emergency, two-thirds of the House where such bill may be pending shall deem it expedient to dispense with this rule, but the reading of a bill by sections on its final passage shall in no case be dispensed with; and the vote of the final passage of every bill shall be taken by yeas and nays, to be entered on the Journal."

The bill having been passed by the House of Assembly went to the Senate February 23d, and on the same day a committee reported the bill for the action of the Senate "with amendments." After amendments had been acted on the bill as amended was read a second time. "Mr. Bryson moved to waive the rule and that the bill be read the third time and put upon its passage, which was agreed to by a two-thirds vote. Mr. Duncan moved that the rule be waived and that the bill be put back on its second reading for purposes of amendment, which was agreed to by unanimous consent. Mr. Duncan offered the following amendment: Strike out all after 'minor' in section 5, which was adopted. On motion, the rule was waived by unanimous consent and the bill as amended was read the third time and put upon its passage." The vote was, yeas, 11; nays, 8; so the bill passed. The above is quoted from the Journal.

The rule having been waived, it was only necessary to read the bill entire on it final passage, and this was done, after which the yeas and nays were called and recorded and the bill was passed. The rule being dispensed with, which the Senate was authorized to do, when, in its judgment, it

was expedient, there was no necessity of reading the bill on three several days or three several times. The rule requiring it was not in existence as to this bill.

Says Judge Cooley, in his Constitutional Limitations, [136] 164 : " Whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of a legislative body ; it will not be presumed in any case, from the mere silence of the journals, that either House has exceeded its authority or disregarded a Constitutional requirement in the passage of legislative acts, unless where the Constitution has expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered." This is sustained by numerous adjudications cited by the author. The principle announced covers this entire case. There must be affirmative evidence that an act attested by the officers of both Houses and approved by the Governor was not passed in accordance with the essential requirements of the Constitution, or it must be upheld.

The writ is quashed.

MR. JUSTICE WESTCOTT delivered the following opinion.

The act regulating the sale clearly comtemplates that the Collector of Revenue shall issue the license to sell. The general revenue statute makes express provision to like effect. The act regulating the sale, when construed with reference to the other legislation upon the subject, contemplates that the County Commissioners shall issue a permit which is to be the basis of the act of the Collector in issuing the license. Any amendment, therefore, providing in terms that the County Commissioners should issue a license to be given an effect consistent with the clear intent of the entire Legislation, must be construed to be equivalent

to authority to issue a permit, and nothing more.   As this authority is already granted, the omission of the amendment would be an immaterial matter, the law having the same effect with it as without it.   I have not examined to see whether such an amendment was made.   With the conclusion I state, the other Justices concur.