THE STATE OF FLORIDA EX REL. ATTORNEY-GENERAL, PLAINTIFF IN ERROR, VS. L. HILTON GREEN, DEFENDANT IN ERROR.

1. The constitutional requirements as to the mode and manner of enacting laws are mandatory, and where the journals kept by the two houses of the Legislature are silent as to matters required to be entered upon them, or where they show affirmatively and explicitly that other constitutional requirements not directed to be entered on the journals have not been complied with in the enactment of a law, the journal evidence will control, and the act declared void.

2. When the Legislature acts in the apparent performance of its legal functions, every reasonable presumption must be made in favor of the action of the legislative body; and it will not be presumed in any case from the mere silence of the journals that either house has disregarded a constitutional requirement in the enactment of a law, unless where the Constitution has expressly required the journals to show the action taken, and in such case their silence will be fatal to the law.

3. The Governor acts as a part of the law-making power of the State in approving bills passed by the Legislature, and unless substantially the same bill that passed the two houses of the Legislature is submitted to him for approval, it can not become a law by his approval, or silence, or against his approval.

4. Under section 3 of Article XVI of the Constitution the title of an act is made an essential and important part thereof, and it will have the effect to control the subject of the act and restrict its provisions to matters properly connected with the subject expressed in the title.

5. The purpose of the constitutional provision (Sec. 3 of Art. XVI) is to prevent "hodge-podge or log-rolling" legislation, surprise or fraud upon the Legislature by means of provisions in acts of which the titles give no intimation, and to fairly apprise the people of the subjects of legislation being enacted.

6. If the title of an act as it passed the legislative bodies, and when approved by the Governor, is so essentially different as to affect the whole act, it can not be said that the same act received the sanction of the entire legislative department of the government; but if the difference is immaterial and unsubstantial it will not annul the law.

7. The rule of construction that although a portion of an act be void, it will not necessarily render the entire act inoperative, if the good and the bad can be separated, and the legislative purpose expressed in the valid portion be given effect to independently of the void part, applies also to titles of acts.

8. The title to the act to create the city of Pensacola (Chapter 4513, act of 1895), being "An act to provide for the creation of the city of Pensacola, now known as the provisional municipality of Pensacola, and for the government of said city of Pensacola, and to provide for its officers and their terms of office, and to provide for the support and maintenance of said government and improvement of said city," as the act passed both branches of the Legislature did not have in it, as is affirmatively and clearly shown by the legislative journals, the words "and to provide for its officers and their terms of office," found in the enrolled bill approved by the Governor : *Held*, That the added words are immaterial and superfluous so far as an expression of the subject in the title is required to authorize legislation in reference to the election of municipal officers of the city is concerned : *Held further*, That the title to the act, eliminating entirely the added words as useless, is sufficient.

to authorize the provisions in the act in reference to the election of municipal officers for said city.

9. The provisions in section 152 of the act (Chapter 4513) that the first election thereunder should be held on the first Tuesday in June, 1895, and bi-ennially thereafter on the same day, and that the election should be held under the general law governing State elections existing at the State election, are not in conflict with the constitutional provision (Sec. 16 of Art. III) that no law shall be amended or revised by reference to its title only, but in such case the act, as revised, or section, as amended, shall be re-enacted and published at length.

10. The provision in section 153, that "the form of ballot used shall conform with the requirements of existing State laws as herein provided," means according to the form of ballot required by the act of 1889, existing at the time of the preceding State election, and not according to the general election law of 1895.

Writ of Error to the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*John C. Avery, John S. Beard* and *C. M. Jones*, for Plaintiff in Error.

REPLY TO POINTS IN BRIEF FOR DEFENDANT IN ERROR.

The brief of attorney for defendant in error was not accessible to attorneys for plaintiff in error until the night before the hearing, so that we had no opportunity to prepare with special reference to certain matters therein insisted and relied upon. We therefore submit the following reply upon certain points made.

1.

The interpolation of the clause in the title is proved by the journal entries.

The journals are not silent. Every entry with reference to the bill expresses the title under which the Legislature considered the measure. If only the number of the bill (Senate Bill 288) had been stated and the title had been omitted, the presumption might be that the title as found in the enrolled bill was the same as that under which Senate Bill 288 had been considered. But, as the journal records the title, there is no room for presumptions.

2.

We deny that the journals may be controlled, when they speak unequivocally and have been approved by the Houses of the Legislature, by the original or engrossed bills. If they can be in this case, they can not be when those alleged bills come under observation in such condition and under such circumstances as in this case. Policy must prevent a constitutional record from being so discredited.

Neither will the legal effect of the journal record be influenced by any extrinsic explanations.

3.

With seeming purpose, at the introduction of the bill, the expression, "now known as the Provisional Municipality of Pensacola," is employed to qualify the clause, "to provide for the creation of the city of Pensacola." The legal effect, by the rules of statutory construction, of the said second clause of the title is too narrow, limit and define the first clause, which standing alone, would indicate the creation of a new municipal corporation by means of any or all constitutional agencies, with all constitutional functions and distribution thereof amongst any constitutional functionaries. The second clause is vain unless it is used to define the legislative purpose as being the scheme of government which had been retained by the

provisional municipality from its creation in 1885, improved by her permanent election system created in 1893, which is in harmony with the election law of 1895. Potter's Dwarris on Stats., 221.

The breadth to be given to the statute was fixed by using the second clause of the title. Cooley Con. Lim., (Marg. page), 144. State vs. Powers, 14 Ind. 195.

The scope of the act having been thus narrowed by the second clause of the title, the interpolated clause (apparently an afterthought, and an expedient resorted to upon reflection at a late day in the progress of the bill) is obviously material, if it is effectual to embrace a broader subject. If it is not effectual for such purpose, then it is immaterial, and the scope of the act is, in essential respects, broader than the title. A thorough reading and analysis of the act and a composition of it with the general municipal incorporation law, which heretofore constituted the charter of Pensacola, will make this clearer to the court than an enumeration and specification by us.

Defendant in error claims that the clause is immaterial and that hence it makes no difference whether it appears in the title lawfully or unlawfully. If the court so finds, and further affirmatively finds that it did not have any effect upon executive action, then it must view the title and construe it without reference to that clause. The result of this, according to our opinion, we have already shown.

4.

Attorneys for defendant in error quote against us the following expression in our brief: "It can not be presumed that the Legislature would have passed the act without provision for putting the proposed new government into operation."

JUNE TERM, 1895.    159

State ex rel. Attorney-General v. Green.—Argument of Counsel.

This expression in the connection in which it is used is not destructive of the argument involving it. Its meaning is that it can not be presumed that the Legislature would have passed the act without that particular mode of election, as it had sedulously boycotted the Pensacola election law and the new general election law.   Hence if that mode failed the act must fail.

5.

The suggestion that "the title was of great importance to the Legislature and possible to the people, but of no importance" to the governor, finds no support in the constitution of Florida or its interpretation by this court.   If the title is such as to make the law or a material part of it bad, the Legislature should not pass it and the Governor should not approve it, and this court would not enforce it.   In the discharge of his duty, the Governor reads the bill and its title, and if together they comprise a constitutional measure and his judgment approves of its policy he signs it.

If he knows of any informality in the passage of the law or conceives that there is some defect in it whether from constitutional unfitness of the title or from other cause, which in his opinion would be fatal to the bill until after further legislative action, he should return the bill without signing.   See Birchall vs. Carrick, 3 Nev. 154.

From the introduction of the bill to its judicial interpretation as an act, by the court, the title commands consideration and controls the application of the law.

6.

If the court finds that it was proper to provide for the election to be regulated by the law of 1889, we invite its examination of that law to discover what the regulations are which it was proposed should guide the election commissioners.   The two provisions applica-

ble will be found to be the publication for fifteen days. of the names of the inspectors and clerks of election and the proclamation of the result of the election at each polling place immediately upon the closing of the polls. The first was impossible and the second, as stated in the information, was ignored. The result is that the election commissioners acted without restraint or legislative guidance and necessarily legislated for themselves. Their own will was the essential law of that election.

7.

It is true, as stated in the brief of attorney for defendant in error, that the Constitution requires only the "subject" and not "matters properly connected therewith" to be stated in the title. But it must be noted that the requirement is not that *a* subject, but "the" subject must be expressed, and that the matters in the body of the act are to be such as are "properly" connected with the subject expressed in the title. People vs. Hill, 35 N. Y., 453; People vs. Commissioners, 53 Barb., 70.

One of the purposes of this provision found in so many, if not all of the State Constitutions, is said to be "to guard against imposition upon a class of legislators whose knowledge of bills was supposed to be gathered principally from the title." Mayor vs. Colgate, 12 N. Y. 140.

The subject or object must be truly expressed and so as to, at least, not mislead, and the matters enacted must be such as "properly" find place under the title.

In this case, the title, *ex industria*, expresses the purpose that the scope of its first clause shall be limited by the second. Hence only such matters as are properly connected with the subject or object, as so limited, properly have place in the act. The Circuit

Judge found the provisions as to Harbor Master and Harbor Commissioner were out of place and unconstitutional even under the full title of the enrolled bill, and we submit that the scheme of government contemplated by this act is essentially invalid for the same reason.

The court will discover in the act before it in this case ample legal grounds for a check upon a vicious practice in legislation which has, of late years, made shuttlecocks of municipal governments in Florida.

*Blount & Blount, John Eagan* and *C. B. Parkhill,* for Defendant in Error.

We discuss the points made by the relator in their logical order:

1.

He contends that the title of the bill, which he attacks was changed by interpolation after it had passed both houses and been signed by their presiding officers, and before it was signed by the Governor. Our answers are:

A. The fact of interpolation is not proved.

B. If proved, the interpolation was of immaterial words, and did not affect the title of the act.

C. If the words made a material addition to the title, they themselves were void and did not affect the title or the act.

a. The journal entries show a title different from the title in the original, engrossed and enrolled bills.

These latter control, because they are the subject matters acted upon by the Legislature, and the journals are but minutes of that action. The journals might control the enrolled bill (though *contra*, see vs.

11

Clark, 143 U. S. and citations), but they can not control the contemporaneous original and engrossed bills.

b. If proved, the interpolation was immaterial and affected neither the title nor the act.

· The portion of the title "to create the city of Pensacola" covered all things incidental to the city and its management, including all details of its management. Jacksonville vs. Basnett 20 Fla. 525; Ex parte Wells, 21 Fla. 324; Sutherland on Stat. Con. secs. 84, 94 and 95; Mont Clair vs. Ramsdell, 107 U. S. 147; Lockhart vs. Troy, 48 Ala. 583; Harris vs. People, 59 N. Y. 599; La. vs. Pilsbury, 105 U. S. 278; People vs. Briggs, 50 N. Y. 560, and clearly included provisions for the elections of officers and the fixing of their terms. The appreciation of the necessary inclusion of an election in the creation of the city is shown by the last sentence, on page 7, of the brief for the relator, in which it is said: "It can not be presumed that the Legislature would have passed the act without provisions for putting the proposed new government into operation."

If the general title did not cover elections, that portion of the title "for the government of said city" would cover the officers and matters relating to them, since one of the meanings of the word "government" is, (Webster) "the person or persons authorized to govern or administer the law."

If, then, without the addition of the title permitted provisions in the body of the act providing for the officers and their terms of office, the alleged interpolation neither added nor subtracted from the title, and did not affect the title in anywise. Plummer vs. People, 74 Ill. 361; People vs. Supervisors, 16 Mich. 256; Binz vs. Weber, 81 Ill. 288; Stein vs. Leper, 78 Ala. 517; Gandy vs. State, 86 Ala. 20; State vs. Doherty, 2

Idaho 1105; Snow, et al., vs. Grand Rapids; 78 Mich. 595. A like rule as to non effect of immaterial matters obtains as to changes in the body of an act. Smith vs. Hoyt, 14 Wis. 252; Sharp vs. Merrill, 41 Minn. 492; State vs. Deal, 24 Fla. 293.

c. If the words alleged to be interpolated had attempted to add another subject, and thus be material, still they would not have affected the act, not having received the approval of the two houses, they would have been entirely inoperative for any purpose. Eliminating them, a complete act with a complete title-concurred in by all the law making functions, would remain and be effective.

The suggestion that the Governor might not have signed the act if the interpolation had not been in it is without force. The title was of great importance to the Legislature and possibly to the people, but of little importance to him. 78 Ala. 521.

Its function as an index had ceased. He approved the policy or expediency of the act. He was not required to approve the title, as it was no part of the policy or expediency. If, however, he laid any stress on the interpolated words, he, of course, did so because he thought them necessary or apt to effectuate the purpose embodied in the bill andconcurred in by him and both houses. If, however, the title was sufficient without those words to accomplish the joint purpose, then it is inconceivable that the absence of them would have caused him to refuse to have approved the bill.

### 2.

The second contention is, that the part of the act in question providing for elections is invalid because it provides that the first election under the act shall be held under the general law governing State elections

164 SUPREME COURT.

State ex rel. Attorney-General v. Green.—Argument of Counsel.

existing at the last State election and it is argued that
as that law had been repealed, it is an attempt to revive
a repealed law by reference to it. The simple answer
to this contention, is, that State Legislatures are bodies
of reserved powers and are supreme in the absence of
constitutional limitations.

There are no constitutional limitations in this State
upon incorporating by reference any matter into an
act when the title covers such matter.

It makes no difference that the matter was once con-
tained in a statute. If that statute is repealed its
matters become as much *res integra* for the purpose of
legislation as if it had never theretofore been enacted
into law. The contention, then, narrows itself down
to an argument that no matter can be enacted in a
statutory law by reference to it. Such contention is
fully met by the case of State vs. Mathis, 31 Fla. 306,
310 and citations therein. See also, People vs. Whipple,
47 Cal. 592, Petition of Barry 12 R. I. 51. References
to the decisions of other States are ineffectual. The
Constitutions of those States expressly prohibit the
reviver of statutes, i. e. necessarily of repealed stat-
utes. Our Constitution does not treat at all of re-
pealed statutes, but only of living statutes, which may
be "amended or revised." Our Legislature has fre-
quently legislated by reference; e. g., adopting the
law of descents in cases of distribution of personal
property (8 Fla. 270); adopting execution claim pro-
ceedings in attachment cases; adopting English and U.
S. Equity Practice for our courts; adopting a general
election law for the city of Jacksonville (Chap. 3775,
laws of 1887); adopting the rights and privileges con-
ferred upon one railroad in incorporating a subsequent
railroad (Chap.) etc., etc., etc.

Nor does it avail to say that the spirit of our Constitution prohibits such incorporation by reference. A statute can not be pronounced unconstitutional because it is supposed to conflict with an assumed spirit of the Constitution. The objector must point out a provision which expressly or impliedly prohibits. Ex parte Wells, 21 Fla. 318 and citations. Cobley Const. Lim. 171. 32 Ala. 592.

A prohibition may be found in the spirit (necessary implication) of a section, or clause, but not of the Constitution. The only section relating to the form of amendment or revision is section 16, Art. 3, of the Constitution of the State of Florida. That expressly deals only with amendment and revision of existing statutes and therefore necessarily excludes any supposed spirit touching the reviser of dead statutes.

If, however, a spirit may be drawn from the express section relating to amendments and revision, it will not aid the relator.

These provisions relate only to amendments or revisions in form and not to amendments and revisions which arise from the enactment of original and complete acts, though they may have the effect of revising or amending other acts. Lake vs. Palmer, 13 Fla. 510; Gandy vs. State, 86 Ala. 20; Ex parte, Pollard, 40 Ala. 77, 100; Falconer vs. Robinson, 46 Ala. 340–8; People vs. Mahoney, 13 Mich. 481; Lehman vs. McBride, 15 Ohio State 572, 601, 605; Davis vs. State, 7 Md. 152. And so, if there can be drawn from these provisions a spirit against reviser by reference, it would be only against a reviser eo. nomine. of an act or a specific section or sections of it, and would not be against the adoption of some of the provisions of the act for a special purpose. Such adoption would not be a reviser of the act, or of any part of it. In this case the

166 SUPREME COURT.

State ex rel. Attorney-General v. Green.—Argument of Counsel.

act alleged to be revised and every part of it related to uniform State and county elections.

For the purposes for which it was enacted, it still remains dead.

It did not at any time provide for city elections and therefore any use of it now for that purpose is original and not revising legislation. "It was independent, not revisory, or subordinate to amendatory legislation." Lake vs. Palmer 18 Fla., p, 515.

3.

But it is said that if such legislation by reference can be validly made, there must be something in the title to indicate that it is being done. This contention ignores the fact that the Constitution requires only the "subject" and not the "matters properly connected therewith" to be stated in the title. Ex parte Wells, 21 Fla. 324; State ex rel. vs. Comrs. Duval County, 23 Fla. 505.

The subject of this act is the creation of the city of Pensacola and provisions for its government, etc. It is too clear for argument under the authorities already cited that under this title all the details for the first election, as well as for the continuation of the government, could be enacted, and that the election of officers was a necessary or at least germane provision for the creation of the city. Being only matter properly connected with the subject, provisions concerning such election need not be referred to in the title, a description of the method of conducting such election could also be omitted. To hold otherwise would be to decide that a detail need not be enacted in the title, but that a lesser detail included in the larger one must be included.

It may be true that one reading the title might not look for an adoption of the election law of 1889, but

that is not the test of the validity of the act as connected with the title.

The test, is, whether the title is broad enough to cover the provisions in question. The provisions may be so unusual that most persons would not anticipate them, but if the title is such as to permit it, the provision is valid. The Legislature and the public must take notice of anything in the title which the Legislature has power to enact under the title.

Whether the enactment shall be usual or unusual, contrary to a prior policy, wise or unwise, is for the Legislature alone and not for the courts; 32 Fla. 592.

4.

The same answer applies to the argument that there was nothing in the title to indicate the repeal of the election law theretofore governing elections in the city of Pensacola and exempting the city of Pensacola from the operation of the election law passed May 25th, 1895. As we have said, the incorporation of provisions for the election law is matter properly connected with the subject of the bill, and it is exclusively for the Legislature to determine what kind of an election law it would enact.

5.

The last objection, is, that the ballots used in the election were not in form.

The objection is a singular one, in view of the fact that it is alleged in the information that the defendant received a majority of all ballots cast, and that there is no allegation that the election was not full, fair and free and that the defendant had any competitor.

Under such circumstances, a mere deviation from the prescribed form would not vitiate the election.

Beyond this, however, it is not denied that the form was that prescribed by the act of 1889 and by the law

168

SUPREME COURT.

State ex rel. Attorney-General v. Green —Opinion of Court.

under consideration that act was to govern the form.

Section 152 provides that the election shall be held under the law existing at "the last State election," (i. e., the law of 1889), and section 153 provides "the form of ballot used shall conform with the existing State law as provided herein."

The object of the court is to get at the intention of the Legislature. That intention evidently was to have the election conducted under the law of 1889. No reason can be conceived for having ballots provided for by one law and the other conduct of election by another. To prevent any question, however, the Legislature added at the end of section 153 the words "as provided herein." The existing law provided herein was the law of 1889 and the reference could be only to that law.

This is made conclusive by the fact that the act passed both houses before and was transmitted by the House to the Senate (Senate Journal 1895, p. 779), on May 17th, 1895, at a time when the only existing State election law was the act of 1889, and eight days before the passage of the election law of May 25th, 1895.

MABRY, C. J.:

This case is here on writ of error from a final judgment of the Circuit Court of Escambia county quashing an information in *quo warranto* filed by the Attorney-General in said court against the defendant in error. The information alleges, in substance, that since the 7th day of June, 1895, the said L. Hilton Green, without authority of law has used, exercised and enjoyed the franchise, functions and powers of councilman of precinct 14 of the city of Pensacola, otherwise designated as District Commissioner of district No. 14 of the provisional municipality of Pensacola, by virtue

of an election held in and for said city on the 4th day
of June, 1895, in alleged compliance with the provis-
ions of an alleged act of the Legislature of Florida,
entitled, at the time of signing thereof by the Gover-
nor, "An act to provide for the creation of the city of
Pensacola, now known as the Provisional Municipality
of Pensacola, and for the government of the said city
of Pensacola, and to provide for its officers and their
terms of office, and to provide for the support and
maintenance of said government and improvement of
the said city," approved May 27th, 1895; that at said
election said L. Hilton Green received the highest num
ber of votes cast for the alleged office of councilman
for said precinct, which is a precinct of said county
entirely within the said city, or provisional municipal-
ity of Pensacola, and identical with election district
number 14 of the provisional municipality of Pensa-
cola, under Chapter 4303 laws of Florida, under which
provision is made for the election of a district commis-
sioner, with powers and functions coextensive and
identical with those usurped by L. Hilton Green.
Further, that the signing and approval of said alleged
act by the Governor was not effectual in law to author-
ize the said election, because, as shown by the Jour-
nals of the Legislature, said supposed act never became
a law of the State of Florida, and because the title to
the same is insufficient to make said act authoritative
for holding said election, and because the supposed act
was ineffectual to create the said proposed city of Pen-
sacola, otherwise known as the provisional municipal-
ity of Pensacola.    That said election was not conducted
in accordance with the provisions of the general elec-
tion law existing at the last State election, in this, that
no publication was made of the names of the inspec-
tors and clerks of election for fifteen days, as required

by section 174 of the Revised Statutes, and that all ballots cast at said election, and all that were cast for said L. Hilton Green, were in such form as provided by the election law existing at the last general election, and not otherwise, except that upon each ballot was the name of each person voted for by the elector for the several officers voted for at said election, all of which were deposited in a single ballot box, and that no proclamation was made after the completion of the canvass as required by section 184 of the Revised Statutes. Also that said L. Hilton Green did not at said election receive any vote for said office in form conforming to that provided by the general election law existing at the time of the passage of the alleged act of May 27th, 1895, no official ballots were provided for or used at said election, and there was no ordinance regulating or providing for municipal elections in said city or provisional municipality of Pensacola.

The information further states that one John Cosgrove was the legal incumbent of the office of district commissioner of said district number 14 at the time of said election, and as no one had been legally elected to succeed him in said office, he was legally entitled to use, exercise and enjoy the franchise, functions and powers of said office which had been usurped, in the manner stated, by the said L. Hilton Green.

A demurrer to the information was sustained by the Circuit Court, and no leave to amend being asked for, the information was quashed.

The information, it will be seen, shows that an election was held under the act of May 27th, 1895, being Chapter 4513, and that at said election the defendant in error received a majority of the votes cast for the office alleged to have been usurped by him. The legality of the election and the right of defendant in error

## JUNE TERM, 1895. 171

State ex rel. Attorney-General v. Green.—Opinion of Court.

to hold the office in question by virtue of the said election, is challenged here upon alleged grounds of infirmity in the passage of the law, and also the non-observance of certain requirements of the general election law of 1895.

It is claimed that the act of May 27th, 1895, Chapter 4513, is void, and conferred no authority to hold said election for the reason that the title of the act as passed by the Legislature and signed by the respective officers thereof, differs materially from the title of the act approved by the Governor, as shown by the enrolled bill in the office of the Secretary of State. The act in question was introduced in the Senate as "Senate Bill No. 288: A bill to be entitled an act to provide for the creation of the city of Pensacola, now known as the provisional municipality of Pensacola, Florida, and for the government of said city of Pensacola, to provide for the support and maintenance of said government and improvement of said city." (Senate Journal, page 564). The bill was referred to a committee and reported back to the Senate by the same title, and without giving in detail the Journal record of the bill as it passed through both Houses of the Legislature, it is sufficient to state that whenever referred to in the Journals of either House, up to and including the signing of the same by the presiding officers thereof, it is designated as Senate Bill No. 288, with the title stated. In the communication of the Governor to the Senate, informing that body of the approval of the bill he designates it as "An act to provide for the creation of the city of Pensacola, now known as the provisional municipality of Pensacola, and for the government of the said city of Pensacola, and to provide for its officers and their terms of office, and to provide for the support and maintenance of said government and improve-

ment of said city." The title to the engrossed and enrolled bills found in the office of the Secretary of State is: "An act to provide for the creation of the city of Pensacola, now known as the provisional municipality of Pensacola, and for the government of said city of Pensacola, *and to provide for its officers and their terms of office,* and to provide for the support and maintenance of said government and improvement of said city." It will be seen that the italicised words in the title to the enrolled bill, signed by the Governor, are absent from the title to the bill as it passed the two Houses of the Legislature, as shown by their journal entries. It is claimed for the plaintiff in error that the journal record controls as to the evidence of what was the title of the bill while on its passage through both bodies, and that this evidence is superior to that of the engrossed or enrolled bills found in the office of the Secretary of State. There are two conflicting views held by the decisions on this subject. Under constitutional requirements that journals of the proceedings of the legislative bodies shall be kept and published, it has been held in many decisions that where the journal entries, as to the legislative proceedings, are explicit, and conflict even with legislative acts regularly authenticated, the journals are superior, and the courts will be governed by them as to matters clearly, explicitly and affirmatively stated therein. The other view, maintained by high authority, is that the legislative act itself embodied in a bill engrossed and enrolled, and bearing the proper official signatures, is of higher dignity than the journals, and will override them. This court has placed itself on the side of those maintaining the view first stated (State *ex rel.* vs. Brown, 20 Fla. 407; State *ex rel.* vs. Deal, 24 Fla. 293; 4 South. Rep. 899; Mathis vs. State, 31 Fla. 291;

12 South. Rep. 681); and as there is ample authority
to sustain this view, we will not now make any de-
parture. It is generally held that the plain constitu-
tional injunctions as to the mode and manner of enact-
ing laws are mandatory, and the equally high author-
ity that journals of the proceedings shall be kept,
strengthens the view that the evidence of a compli-
ance with such injunctions should be found in the
journals. The inconvenience and danger resulting in-
cidentally from the rule that the journals when clear
and explicit as to matters proper to be incorporated
therein will control, can be guarded against by a proper
observance of the prescribed procedure and diligent
attention to the making and preservation of the re-
quisite journal evidence. But while the journals will
control, under the rules announced by this court, as to
the legislative proceedings, it is proper to observe, in
language used by Judge Cooley, and quoted by this
court, that whenever the Legislature is acting in the
apparent performance of its legal functions, every
reasonable presumption is to be made in favor of the
action of a legislative body; it will not be presumed
in any case, from the mere silence of the journals, that
either House has exceeded its authority or disregarded
a constitutional requirement in the passage of legisla-
tive acts, unless where the Constitution has expressly
required the journals to show the action taken, as, for
instance, where it requires the yeas and nays to be
entered. State ex rel. vs. Brown, 20 Fla. 407. As all
bills and joint resolutions that pass both Houses of the
Legislature are required to be signed by their respective-
presiding officers, and also by the secretary of the
Senate and clerk of the House of Representatives, an
act thus authenticated and approved by the Governor
will not be set aside unless the journals affirmatively.

and explicitly show that the constitutional require-
ments have not been observed, except where the Consti-
tution requires the journals to show the action taken,
and then their silence will be fatal.   An examination
of the journals of the two Houses of the Legislature,
which must control us, leaves no room to doubt that
the title of the act as it passed both Houses differs, in
the particulars mentioned, from the title of the en-
rolled bill approved by the Governor.   The journal
evidence of this fact is affirmative and explicit.

It is settled by this court that the Governor acts as
a part of the law-making power of the State in approv-
ing bills passed by the Legislature, and unless sub-
stantially the same bill that passed the two Houses of
the Legislature is submitted to the Governor for his
approval, it can not become a law by his approval, or
silence, or against his approval.   Advisory Opinion,
23 Fla. 297, 6 South. Rep. 925; State *ex rel.* vs. Deal,
24 Fla. 293, 4 South. Rep. 899.

Our Constitution (Article III, Section 16) provides
that "each law enacted in the Legislature shall em-
brace but one subject and matter properly connected
therewith, which subject shall be briefly expressed in
the title."   Under this provision the title of an act is
an essential and important part thereof.   Binz vs.
Weber, 81 Ill. 288; Johnson vs. People, 83 Ill. 431;
Stein vs. Leeper, 78 Ala. 517; State *ex rel.* Gonzales
vs. Palmes, 23 Fla. 620, 3 South. Rep. 171.   The aim
and purpose of incorporating into organic laws the
constitutional provision mentioned is fully disclosed
in the judicial discussions on the subject.   They are
summed up by Judge Cooley to be: "first, to prevent
hodge-podge or 'log-rolling' legislation; second, to
prevent surprise or fraud upon the Legislature by
means of provisions in bills of which the titles gave

no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire.'' Cooley's Constitutional Limitations (6th ed.), page 172; O'Leary vs. County of Cook, 28 Ill. 534; Mayor, etc. vs. State, 5 Ga. 26; Harland vs. Territory of Washington, 3 Wash. Ter. 131; Sutherland on Statutory Construction, sec. 76 *et seq.* The office of the title of an act under constitutions like ours, it is evident, is to control the subject of an act of legislation, and to restrict its provisions to matter properly connected therewith. It may be that the necessity and reasons for the requirement that the subject of an act shall be restricted to the subject expressed in the title as it passes the legislative bodies do not exist with the same urgency as applied to the approval of the law by the Governor, but still it is essential that an act have a title which will have a controlling effect over the subject-matter of the act, and if the difference between the title of an act as it passed the legislative bodies and when approved by the Governor, is so essential as to affect the entire act, it can not be said that the same act received the sanction of the entire legislative department of the State. If such difference is immaterial and unsubstantial, it can not annul the law. Plummer vs. People, 74 Ill. 361; People *ex rel.* Gale vs. Supervisor of Onondago, 16 Mich. 254; Stein vs. Leeper, *supra.* As stated in State *ex rel.* vs. Deal, *supra*, unless substantially the same bill as was passed by the Legislature is submitted to the Governor for his approval or disapproval, it can not become a law

either by his approval or silence, or against his approval. Moog vs. Randolph, 77 Ala. 597. It is also a familiar rule of constitutional construction that although a portion of an act be void, it will not necessarily render the entire act inoperative. If the good and the bad can be separated, and the legislative purpose as expressed in the valid portion be given effect to independently of the void part, so much of the act as is constitutional will be carried out. This rule has often been recognized by this court. English vs. State, 31 Fla. 340, 12 South. Rep. 691; State *ex rel.* vs. Dillon, 32 Fla. 545, 14 South. Rep. 383; City of Tampa vs. Salomonson, 35 Fla. 446, 17 South. Rep. 581. Likewise, if an enrolled bill approved by the Governor contain matter not embraced therein when it passed the two Houses of the Legislature, it will not necessarily follow that the entire act is void. If the portion of the act that has received the approval of the entire legislative department can be separated from the other portion, and the one is not dependent in any manner upon the other, that which has been constitutionally enacted may be enforced as law. In other words, the same rule as to separating matter in an act that has received the joint approval of all the legislative departments, but one part is constitutional, and the other not, will apply to an act where matter finds its way into a bill enrolled for the approval of the Governor that did exist therein when passed upon by either or both of the two Houses of the Legislature. That this is the rule where improper matter gets into the body of the act, is fully recognized in the case of State *ex rel.* vs. Deal, *supra*, and that the same rule applies where such matter appears in the title of an act, is fully decided in Stein vs. Leeper, and Binz vs. Weber, *supra*, as well as in other cases.

In view of the rule stated, we must determine whether the words found in the enrolled bill approved by the Governor, and shown by the journals, not to have been in the title of the act passed by the two Houses of the Legislature, vitiate the entire act. The provisions in the title, approved by the entire legislative department, "to provide for the creation of the city of Pensacola, now known as the provisional municipality of Pensacola, and for the government of the said city of Pensacola," are broad and ample enough to authorize the incorporation into the body of the act provisions for the election of municipal officers for the city. In the light of the decisions on the subject we entertain no doubt about this proposition. Acts creating corporations afford many illustrations of one general subject capable of many divisions. The title of an act to create a named corporation and provide for its government, does not confine the act itself to the simple creation of the corporate entity, but under such a title the act can go on and define the powers of the corporation and regulate their exercises. City of Jacksonville vs. Basnett, 20 Fla. 525; State *ex rel.* Gonzalez vs. Palmes, 23 Fla. 620, 3 South Rep. 171; People vs. Mahaney, 13 Mich. 481; State *ex rel.* Cole vs. New Whatcom, 3 Wash. 7, 27 Pac. Rep. 1020; Sutherland on Statutory Construction, sec. 94.

Provisions creating strictly municipal offices and regulating their election can be incorporated into the act under the title stated, and the added words to the title, "to provide for its officers and their terms of office," are not necessary to permit such provisions. In fact, such added words are entirely immaterial and superfluous so far as an expression of the subject in the title is required to authorize legislation in refer-

12

ence to the election of municipal officers. Nor can it be said, on an examination of the entire act, that the words "to provide for its officers and their terms of office," add anything material to any provision in the act inseparably connected with the provisions in reference to the election of municipal officers for the city. Every provision in reference to this subject is fully covered by the title as we are considering it, and that was approved by both the Legislature and the Governor, and we discover nothing in the body of the act affecting the election of municipal officers that is not entirely separable from, and independent of, any other provision that can be claimed to be authorized by the rejected words from the title to the enrolled bill.

What we have said in reference to the title to the act in question, disposes of, in a great measure, the further contention that the title of the enrolled bill, conceding that to be the true title, is not sufficient to authorize the provisions found in the body of the act in reference to the election of municipal officers. We have just concluded that the added words in the title to the enrolled bill effected no material change in the title of the act as it passed both Houses of the Legislature, so far as the election of municipal officers is concerned, and the force of the objection, if it has any, will apply equally to the title of the act as we are now considering it. This objection is based upon the view that considering the past legislation in reference to the city of Pensacola, the title to the act indicated simply a purpose to remove both the name and other vestiges of the provisional character of the government of the city and "place her in line with other Florida municipal governments," and that there is nothing in the

title that indicated a purpose to accomplish more than this.

The constitutional requirement is that each law shall ·embrace but one subject and matter properly connected therewith, and that the subject shall be briefly expressed in the title. This clause should be construed in furtherance of the objects intended to be accomplished by it. What those objects are we have already seen. If the title is broad enough to cover the provisions in the body of the act, and to give notice of the subject-matter of legislation, there is no foundation for the court to annul the law. A title may be general "so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection," or it may be made as restrictive as the Legislature may determine. Cooley's Constitutional Limitations (6th ed.), page 173; State *ex rel* Gonzalez vs. Palmes, 23 Fla. 620, 3 South. Rep. 171. Under the authorities already cited, the provisions of the title to provide for the creation of the city of Pensacola and for the government of said city, are ample to authorize the provisions in the act in reference to the election of municipal officers for the city, and such a title is to give notice that the Legislature will enact such provisions.

The act under which the election in question was held was approved by the Governor on the 27th day of May, 1895, and took effect at that time. Section 152 provides that the first election under the act shall be held on the first Tuesday in June, 1895, and biennially thereafter on the same day. Also that "the election shall be held under the general law governing State elections, existing at the last State election, and city ordinances, with such exceptions as are herein pro-

vided. Every elector, and only such as were qualified
at the last State election, shall be qualified to vote in
this election, provided that in this, the first election
under this act, such electors as were qualified at the
last State election, but have since then been disquali-
fied by reason of the amendment of section 1, Article
VI, of the Constitution, shall be allowed to vote upon
presentation of their certificates of naturalization.''
On the 25th day of May, 1895, the Governor approved
an act providing for the registration of all legally
qualified voters in the several counties of the State,
and to provide for general and special elections, and
to repeal all laws in conflict therewith. This act took
effect upon its approval by the Governor (Chapter
4328, laws of 1895). It is contended that the Pensacola
charter bill seeks to revive, by reference only, the
election law in force at the time of the prior State elec-
tion, which had been repealed when the former act was
approved. This contention is based upon the clause
in our Constitution providing that ''no law shall be
amended or revised by reference to its title only; but
in such case the act, as revised, or section, as amended,
shall be re-enacted and published at length.'' It will
be observed that the provision mentioned says that no
law shall be *amended* or *revised* by reference to its
title only, and not that no law shall be *revived* in the
manner indicated. Some constitutions expressly pro-
vide that no law shall be *amended* or *revived* by ref-
erence to its title only, but ours does not. It was
neither the purpose nor the effect of the act in ques-
tion to *amend or revise* the election law in force at the
preceding State election, but simply to adopt the pro-
visions of that law as the rule for the government of
the municipal election under the act. Our further ex-
amination of this subject leaves no doubt in our minds

that the Legislature has the power to make the rules of any law, whether statutory or common law, existing or repealed at the time, operative on any subject of legislation when the Legislature can otherwise act on such subject. The adoption or revival of the acts in reference to pleading and practice in the courts of this State in force prior to the adoption of the code, has always been considered as properly done, and it is a case in point. An examination of the authorities cited, and a careful review of the decision in the case of Mathis vs. State, 31 Fla. 291, 12 South. Rep. 681, convinces us that the conclusion reached in that case is correct.

The other objection under this head, that if it be competent for the Legislature to revive a repealed law by reference only, the intention to do so should be expressed in the title, is without merit. As we have stated, it was competent under the proper title of the act of May 27th, 1895, to provide for the election of the ·municipal officers of the city of Pensacola, and that such matter was properly connected with the subject expressed in the title. In speaking of provisions of constitutions on the subject similar to the one in ours, Judge Cooley says (Const. Lim., page 172); "The general purpose for the provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." Gibson vs. State, 16 Fla. 291; Ex parte Wells, 21 Fla. 280; Holton vs. State, 28 Fla. 303, 9 South. Rep. 716; Sutherland on Statutory Construction, sec. 88. The objection raised in the supplemental brief of counsel

for plaintiff in error is met by what has been said.

The only remaining contention to be noticed is, that the form of the ballot used at the election on June 4th was not such as is prescribed by the general election law approved May 25th, 1895, Chapter 4328. It is contended that the official ballot prescribed by the general election law of 1895 was required by the Pensacola act to be used, and that it is conceded on the pleadings that such ballot was not used at the election in question. The last clause of section 153 of Chapter 4513 (the Pensacola act) provides that "the form of ballot used shall conform with the requirements of existing State laws as herein provided." This must be construed to mean according to the form of ballot required by the act of 1889, existing at the time of the preceding State election, and not according to the general election law of 1895. That this was the purpose of the Legislature is evident. In the section preceding the one in which the form of the ballot is mentioned it is expressly provided that the election should be held under the general law governing State elections existing at the last State election, and then it is further provided in the following section that the form of the ballot shall conform to the requirements of existing State laws as therein provided. It is furthermore seen from the journals that when the Pensacola bill was introduced, and during most of the time occupied in its passage, the election law existing at the former State election had not been repealed. Taking sections 152 and 153 together, the proper construction to be placed on them is, that the form of ballot required is that prescribed by the act of 1889, the general election law existing at the then last State election.

What we have said is enough to cover the objections urged here on behalf of plaintiff in error, and after

JUNE TERM, 1895.    183

First Nat. Bk. of Fla. v. S. F. & W. and J. St Ry. Cos.—Syllabus.

carefully considering all the questions raised on the record our conclusion is that the judgment must be affirmed. Order to be entered accordingly.